# IN THE COURT OF APPEALS OF IOWA

No. 15-1110
Filed May 25, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEITH RAY WILLIAMS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mark D. Cleve
(motion to suppress) and Henry W. Latham II (trial), Judges.



        Keith Williams appeals following his conviction for possession of a firearm
by a felon. **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Robert P. Ranschau,
Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant
Attorney General, for appellee.



        Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Keith Williams appeals following his conviction for possession of a firearm by a felon. He advances two arguments in this appeal: (1) he contends the trial court erred in denying his motion to suppress evidence, and (2) contends the evidence is insufficient to support his conviction. Because probable cause existed for the issuance of a search warrant, we affirm the denial of his motion to suppress. Substantial evidence supports the finding Williams possessed a firearm. Accordingly, we affirm his conviction.

**I. Background Facts and Proceedings.**

Williams was arrested as a result of a Davenport Police Department investigation into a November 2013 drug-related shooting in which Cairo Joiner fired shots at Willie Thomas. Thomas identified Joiner as the shooter. A witness to the shooting saw the shooter drop an item, and officers later recovered a cell phone belonging to Joiner in the area. The witness also gave officers a description of the vehicle the shooter got into after the shooting.

Joiner admitted he shot at Thomas with a 9 mm handgun. Joiner told officers that a man known as "Cheese," who had been present during the incident, took the gun after the shooting. A Davenport police detective identified Williams as "Cheese." In October 2013, Williams had been stopped by a sheriff's deputy while driving a vehicle similar to the one described by the shooting witness. That vehicle was registered to Williams's girlfriend, Cyrea Richmond. Officers observed the same vehicle parked outside Richmond's apartment.

Based on the foregoing information, law enforcement officers obtained a warrant to search Richmond's apartment in December 2013. In one of the

apartment's bedrooms, dubbed the "adult" bedroom, officers discovered a 9 mm semi-automatic handgun containing one round of ammunition. The handgun was found on the floor hidden inside a leather "industrial-like" sleeve and was wrapped in two plastic sacks with two black gloves stretched over it. In the same bedroom, officers located items identified as men's clothing: shirts in sizes 2XL and 3XL, pants with a waist size of 38, and shoes in sizes 10, 10.5, and 11. Williams was wearing a size 3XL shirt and size 10.5 shoes at the time he was arrested. Also found in the bedroom were a number of items bearing Williams's name, including prescription medication, envelopes, paystubs, utility bills, and a YMCA membership card.

Because he has a prior felony conviction, Williams was arrested and charged with one count of possession of a firearm by a felon. Williams moved to suppress the evidence obtained during the search of the apartment, alleging the facts outlined in the search warrant failed to establish probable cause. After a hearing, the trial court determined there was a substantial basis for concluding probable cause existed, and it denied the motion.

Williams was tried to a jury and was found guilty as charged. He was sentenced to no more than five years in prison. Williams timely filed a notice of appeal.

**II. Probable Cause.**

Williams first contends the trial court erred in denying his motion to suppress the evidence obtained during the search of Richmond's apartment, arguing there was not probable cause to support issuance of a search warrant. Specifically, he claims the evidence is insufficient to show he is the person

referred to as "Cheese," he resided with Richmond, or Richmond's vehicle was involved in the shooting.

Questions concerning the deprivation of a constitutional right are reviewed de novo. *See State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). In doing so, we do not make an independent determination of probable cause, but instead, we determine whether the judge issuing the warrant had a substantial basis for concluding the warrant was supported by probable cause. *See id.* Probable cause exists if a person of reasonable prudence would believe the items sought in the warrant are connected to criminal activity and these items will be found in the place to be searched. *See id.* In making this determination, we review the information actually presented to the judge. *See id.* We also give the probable-cause finding great deference, draw all reasonable inferences in support of it, and interpret the affidavit of probable cause in a common-sense rather than a hypertechnical manner. *See id.* at 100. In close cases, we will find in favor of upholding the warrant's validity. *See id.*

Applying these rules, we determine the judge issuing the warrant had a substantial basis for concluding the gun used in the November shooting would be found in Richmond's residence. The affidavit accompanying the warrant application states Joiner, the admitted shooter, stated he was with Tyrone Whitelow and "Cheese" at the time and that "Cheese" took the gun after the shooting. Although Joiner did not know the person's real name, he identified "Cheese" as Whitelow's "brother." One of the police detectives identified "Cheese" as Williams and an associate of Whitelow. The same detective had identified Williams's listed address as that of Richmond, Williams's girlfriend.

Williams was stopped while driving Richmond's vehicle, a silver GMC Suburban, a month before the shooting. A witness to the shooting described the vehicle involved as "a tan or gold SUV, similar to a Chevrolet Suburban, [though] he believed it to be a GMC version of the Suburban." Though the color of Richmond's vehicle differs slightly, it otherwise matched the description of the vehicle seen at the shooting. Based on this information, a person of reasonable prudence would believe the 9 mm handgun involved in the November 2013 shooting would be found in Richmond's apartment. Accordingly, we affirm the denial of the motion to suppress.

### III. Sufficiency of the Evidence.

Williams also argues there is insufficient evidence to support his conviction of possession of a firearm by a felon. In order for Williams to be found guilty, the State had to prove beyond a reasonable doubt that Williams "knowingly received, transported, caused to be transported, had under his dominion and control, or possessed a firearm" and "was previously convicted of a felony." Williams challenges the sufficiency of the evidence proving possession. Specifically, he argues there is insufficient evidence to show he placed the handgun in the bedroom or knew of its presence in the residence.

We review a challenge to the sufficiency of the evidence for correction of errors at law. *See State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). In so doing, we consider all record evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn, and uphold the verdict if it is supported by substantial evidence. *See id.* If a rational fact finder could conceivably find a defendant guilty beyond a reasonable doubt, substantial

evidence supports the verdict. *See id.* Evidence is not substantial if it only raises suspicion or allows for speculation or conjecture. *See id.*

In order to prove Williams was in possession of the handgun, the State had to prove Williams had knowledge of its presence and the authority or right to maintain control of it. *See State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016). Possession may be proved by inferences. *See id.* Because Williams was not in exclusive possession of the apartment, additional proof was needed to show he had possession. *See id.* The nonexclusive list of factors to be considered in determining whether a defendant possessed a firearm discovered in a jointly-occupied structure includes: "(1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a [firearm] among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the [firearm]; and (4) any other circumstances linking the person to the [firearm]." *Id.* at 706.

The evidence shows Williams lived in Richmond's apartment: the bedroom contained numerous items of men's clothing and shoes in Williams's sizes; mail addressed to Williams was found in the bedroom; a Christmas stocking bearing the name "Keith" hung in the living room; and the bedroom contained personal effects belonging to Williams, such as prescription medication, paystubs, and bills. An envelope, found in Richmond's SUV that Williams was driving at the time of his arrest after the shooting, is addressed to Williams at the apartment's address.[1] The gun was found on the floor of the adult bedroom in the vicinity of

---

[1] Although the apartment number was 6C and the envelope is addressed to "Unit D," the street address is correct.

items that were identified as belonging to Williams.  The gun was wrapped in a leg-leather that was described as the type used by industrial or manufacturing workers.  Williams's paystubs from two manufacturing companies were present in the bedroom, along with a hard hat and steel-toed work shoes, suggesting Williams worked in an industrial setting.  We find this evidence sufficient to prove Williams's knowledge and control over the handgun.  Accordingly, we affirm his conviction for possession of a firearm by a felon.

**AFFIRMED.**